UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

AQUARIUS JOHNSON,

        Plaintiff,

v.

CATHERINE S. BAUMAN, et al.

        Defendants.
_____/

Case No. 2:24-cv-206

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA). The Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.**  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events

about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues the following LMF personnel in their official capacities: Warden Catherine S. Bauman, Assistant Deputy Warden T. Kienitz, Resident Unit Manager Unknown Naeyaert, and Assistant Resident Unit Manager Brad T. Hill. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that his "prison sentence has been in shambles since [he] got into a feud with a number of gang members." (*Id.*, PageID.3.) Plaintiff was "threatened over and over again where people [he] never met before would assault [him] out of nowhere, and [Plaintiff] would have to fight with all these random different people[,] especially during [his] time in a Level 4 setting." (*Id.*) Plaintiff avers that he believes the "majority of the feud consisted of people from Detroit." (*Id.*) He "explained as much as [he] knew regarding this situation to all Defendants listed above." (*Id.*) Plaintiff also experienced a "spiritual reve[]lation where [he] was shown [his] intuition is correct." (*Id.*) Plaintiff contends that he is in fear for his life and that he has "requested protective custody rather than going back to a Level 4 setting and experiencing all of this turmoil all over again." (*Id.*) Plaintiff goes on to assert that staff at LMF have refused to take his fears seriously because Plaintiff does not know "the next hitman's identity and name of who they were going to send after [him]." (*Id.*) Plaintiff claims that he has been forced to remain in segregation "until this matter is fully resolved." (*Id.*)

Plaintiff mentions that he was placed in protective custody in 2018. (*Id.*) He "worked [his] points down[,] got an education[,] and went to Level II where [Plaintiff did not] have any problems like this for years." (*Id.*) Plaintiff was then moved to the Kinross Correctional Facility (KCF), where he claims "it all kind of started back up again." (*Id.*) Specifically, Plaintiff notes that staff at KCF allowed a Level IV prisoner to be housed with Level II prisoners, and that the Level IV

prisoner was "robbing [Plaintiff] blind and hiding behind a gang." (*Id.*) Plaintiff got into a fight with the prisoner, and KCF staff sent Plaintiff to Level IV and kept the other inmate there. (*Id.*)

Plaintiff goes on to assert that being in segregation has "hindered [him] in court where the process of requesting legal material is hard and [he cannot] contact [his] attorney." (*Id.*) Prisoners in segregation "have 15 min[ute] blocks on the phones which allows prisoners to use the phone after 15 minutes has expired, forcing [Plaintiff] to use a 10 min[ute] free call and then wait 15 min[utes] before placing another call." (*Id.*, PageID.4.) According to Plaintiff, staff retrieve the phone before the waiting time has expired because other people need to use it. (*Id.*) Plaintiff goes on to state that his attorneys are in different states, and that he needs to be able to contact them "immediately." (*Id.*) Plaintiff avers that "[w]aiting 2 or 3 weeks for [his] letter to travel from the Upper [Peninsula] to the State of Georgia in [the] quest of seeking out hiring an attorney in the State of Michigan to help [him] with [his] appeal is unfathomable." (*Id.*) Plaintiff contends that "no sound attorney will accept [his] case with deadlines being to[o] close by and them not having enough time to go over [his] case." (*Id.*) Plaintiff argues that he has newly discovered evidence that he cannot present because he is still sitting in segregation and is unable to "fully reach out to [his] outside resources." (*Id.*) He also mentions that staff at LMF wrote him three misconduct tickets for refusing to go to general population because "every time [Plaintiff has] asserted [he] was not guilty and [he] truly feared for [his] life." (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert First Amendment access to the courts claims, Eighth Amendment failure to protect claims, and Fourteenth Amendment procedural due process claims premised upon the misconduct tickets he received. Plaintiff seeks damages, as well as injunctive relief in the form of an order directing LMF

3

to place him in protective custody and removal of the three misconducts from his record. (*Id.*, PageID.5.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

4

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As set forth above, the Court has construed Plaintiff's complaint to assert First Amendment access to the courts claims, Eighth Amendment failure to protect claims, and Fourteenth Amendment procedural due process claims premised upon the misconduct tickets he received.

### A. Official Capacity Claims

Plaintiff has sued Defendants in their official capacities only. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity in § 1983 actions, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

5

Here, Plaintiff seeks monetary damages as well as injunctive relief. (Compl., ECF No. 1, PageID.5.) However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state any claim upon which relief can be granted for monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

As an initial matter, although Plaintiff's request that the Court "remove" his three "misconducts for refusing to go to general population" can be viewed as a request for prospective injunctive relief, Plaintiff alleges no facts about where he received these misconducts. (Compl., ECF No. 1, PageID.4.) Under these circumstances, Plaintiff does not allege facts to suggest that any of the named Defendants, all of whom work at LMF, would be responsible for providing such relief.

Further, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at LMF, which is where he avers Defendants are employed. Thus, Plaintiff cannot maintain his claims for injunctive relief against Defendants.

Plaintiff, therefore, has failed to state a claim upon which relief can be granted against Defendants in their official capacities. Because Plaintiff's has named Defendants in their official capacities only, his complaint is subject to dismissal for that reason alone. Nevertheless, the Court has considered the merits of Plaintiff's constitutional claims below.

### B.     Merits of Plaintiff's Claims

#### 1.     First Amendment Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court has squarely held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff mentions that while he was in segregation at LMF, he experienced issues with contacting attorneys in an attempt to retain counsel to represent him on an appeal. (Compl.,

8

ECF No. 1, PageID.4.) Plaintiff avers that he has newly discovered evidence that he has been unable to present. (*Id.*) Plaintiff, however, does not describe the nature of his appeal, nor does he provide the Court with sufficient factual allegations to plausibly suggest that his appeal would have asserted a nonfrivolous claim. Moreover, public records indicate that the only appeal that Plaintiff has pending is an application for leave to appeal the denial of a successive motion for relief from judgment to the Michigan Supreme Court. *See* Register of Actions, *People v. Johnson*, No. 167844 (Mich. Sup. Ct.), https://www.courts.michigan.gov/c/courts/coa/case/371114 (last visited Mar. 12, 2025). The docket reflects that Plaintiff filed his application for leave to appeal on December 3, 2024, shortly before he initiated this action. *See id.* Thus, despite Plaintiff's difficulties in contacting potential attorneys, he appears to have been able to successfully file his appeal.

Accordingly, for these reasons, Plaintiff fails to state First Amendment claims for interference with his access to the courts, and such claims will be dismissed.

### 2.    **Eighth Amendment Failure to Protect**

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential

connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

Here, Plaintiff contends that while he was incarcerated at LMF, he was targeted by gang members and was assaulted by inmates he had never met. (Compl., ECF No. 1, PageID.3.) Plaintiff believes that the "majority of the feud consisted of people from Detroit." (*Id.*) Plaintiff states that he "explained as much as [he] knew regarding this situation to all Defendants listed above." (*Id.*) Plaintiff's conclusory allegations, however, are insufficient for the Court to infer that any named Defendant knew of and disregarded an excessive risk to Plaintiff's safety. Plaintiff does not set forth any facts regarding when he talked to each Defendant and what he told each Defendant about the situation. Moreover, Plaintiff's reference to "all Defendants listed above" is insufficient to show how each Defendant was personally involved in the alleged violations of Plaintiff's Eighth Amendment rights. Plaintiff's "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)).

Accordingly, for the foregoing reasons, Plaintiff's Eighth Amendment failure to protect claims will be dismissed.

### 3. Fourteenth Amendment Due Process

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims premised upon his receipt of three misconduct convictions for refusing to go to general population. (Compl., ECF No. 1, PageID.4.)

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See id.* ¶ DDDD & Attachment D.

Plaintiff states that he received three misconduct convictions but fails to specify any details regarding any of them. As an initial matter, Plaintiff does not indicate where he received these misconduct convictions. Therefore, based on the facts alleged by Plaintiff, it is not clear that he received these misconduct convictions at LMF, where he avers that Defendants are employed. Even setting this issue aside, to the extent that Plaintiff was convicted of Class II and III misconduct, they would not have resulted in the loss of good time or disciplinary credits. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v.*

11

*Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from any Class II and II misconduct convictions he might have received.

To the extent that Plaintiff was convicted of Class I misconducts, Plaintiff has not—and cannot—allege a deprivation that will inevitably affect the duration of his sentence. Plaintiff is serving indeterminate sentences for offenses committed after 2000. *See* Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=937143 (last visited Mar. 12, 2025). Prisoners like Plaintiff who are serving indeterminate sentences for offenses committed after 2000 can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff provides no facts regarding what sanctions he received for the misconduct convictions. While it appears that Plaintiff may have stayed in segregation, confinement in segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Plaintiff has not set forth any facts that would rise to the level of extreme circumstances.

Accordingly, for the foregoing reasons, any purported Fourteenth Amendment procedural due process claims will be dismissed.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the full appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     March 17, 2025                         /s/ Jane M. Beckering
                                                  Jane M. Beckering
                                                  United States District Judge